ACCEPTED
01-14-00104-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/26/2015 4:38:07 PM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00104-CV

IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT OF TEXAS AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/26/2015 4:38:07 PM
CHRISTOPHER A. PRINE
Clerk

WHITE LION HOLDINGS, L.L.C.,
*Appellant*,

V.

STATE OF TEXAS,
*Appellee*.

On Appeal from the 98th Judicial District Court of Travis County, Texas

## STATE OF TEXAS' RESPONSE TO APPELLANT'S MOTION FOR PANEL REHEARING AND MOTION FOR RECONSIDERATION *EN BANC*

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JOHN B. SCOTT
Deputy Attorney General
for Civil Litigation

JON NIERMANN
Chief, Environmental Protection
Division

CRAIG J. PRITZLAFF
Assistant Attorney General
State Bar No. 24046658
*craig.pritzlaff@texasattorneygeneral.gov*

LINDA B. SECORD
Assistant Attorney General
State Bar No. 17973400
*linda.secord@texasattorneygeneral.gov*

Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR THE STATE OF
TEXAS

**June 26, 2015**

# Table of Contents

TABLE OF CONTENTS..................................................................................i

INDEX OF AUTHORITIES...........................................................................v

STATEMENT OF THE CASE..........................................................................1

RESPONSE TO WHITE LION'S STATEMENT ON ORAL ARGUMENT.........2

STATEMENT OF THE FACTS .......................................................................2

    A. Timeline of the Morello Matter..................................................................4

STANDARD OF REVIEW .............................................................................6

    A. Order of Severance ...................................................................................6

    B. Traditional Motion for Summary Judgment...............................................6

ARGUMENT AND AUTHORITIES................................................................7

    I.    White Lion has Waived its Arguments Regarding the District
        Court's Severance Order .........................................................................7

        A. White Lion has Waited Until the Motion for Rehearing Stage to
           Challenge the Severance Order................................................................7

        B. Trying to Avoid the Effect of its Waiver of the Severance Issue,
           White Lion Claims it Must be Heard Now Because of
           "Jurisdiction."  However, this is Not a Jurisdictional Claim that
           may be Raised at Anytime.  The District Court did Not Lack
           Jurisdiction to Issue the Severance Order and, Therefore,
           Challenges to that Order Must be Preserved and Presented on
           Appeal........................................................................................................8

        C. The Cases that White Lion Relies on Actually Demonstrate that
           Severance is an Issue that can be Waived..........................................10

D. White Lion's Excuse for Not Earlier Challenging the Severance is Disingenuous ...................................................................11

II. Even if the Court Determines White Lion did not Waive its Arguments, the District Court's Severance was Proper Because the State's Suit was Against Two Separate Parties that Each Committed Independent Violations.........................................13

    A. Severance Orders, such as that Issued by the District Court in this Case, are Common and Appropriate .............................13

    B. Section 7.102 of the Texas Water Code is Not Limited to a Single Person Per Non-Compliant Event.............................15

    C. The Suits Against White Lion and Morello are Separate and Distinct ....................................................................18

    D. There is No Apportionment of Liability under Section 7.102 of the Texas Water Code .......................................................20

III. The Severance was Proper and the Court Retains Jurisdiction to Consider this Appeal ............................................................20

IV. The Civil Penalties Assessed are not Unconstitutionally Excessive and Penalties Assessed Against two Separate Parties is Not a Double Recovery ...............................................................21

    A. The District Court Awarded Only the Minimum Penalty Permitted by Section 7.102 of the Texas Water Code .........21

    B. That White Lion and Morello are Related Parties does not Make a Recovery Against Each Party under Section 7.102 of the Texas Water Code an Impermissible Double Recovery ...............24

    C. Severance did not Deprive the District Court an Opportunity to Review the Individual Liability of Each Party...................25

    D. White Lion has not been Deprived of an Ability to Litigate its Defense .....................................................................26

V. White Lion Provides No Basis to Overturn this Court's Decision Based on Arguments Concerning Estoppel, Waiver, and Laches Defenses Properly Rejected by the District Court and Not Previously Briefed to this Court ...............................................27

    A. White Lion has Waived its Arguments Regarding Waiver, Estoppel, and Laches ...............................................27

    B. White Lion's Defenses were Considered and Properly Rejected by the District Court ...............................................28

        1. The Limited Exception Applying Estoppel Against the Government is Not Applicable Here ...............................................30

    C. White Lion's Renewed Assertions About the TCEQ's Obligations with Respect to Financial Assurance Mechanisms are Wrong ...............................................32

    D. White Lion's Assertion that the TCEQ Interfered with White Lion's Discussions with the U.S. Environmental Protection Agency are Erroneous ...............................................33

VI. White Lion Improperly Cites to Documents Not in the Appellate Record ...............................................34

CONCLUSION AND PRAYER ...............................................37

CERTIFICATE OF COMPLIANCE ...............................................39

CERTIFICATE OF SERVICE ...............................................39

# Table of Authorities

**Cases**                                                                                                                           **Pages**

*Allright, Inc. v. Pearson*,
    735 S.W.2d 240 (Tex. 1987) ..................................................................................7

*Arredondo v. City of Dallas*,
    79 S.W.3d 657 (Tex. App.—Dallas 2002, pet. denied) .................................14

*Capitol Rod & Gun Club v. Lower Colo. River Auth.*,
    622 S.W.2d 887 (Tex. App.—Austin 1981, writ ref'd n.r.e.) .......................29

*Chapman v. Mitsui Eng'g and Shipbuilding Co.*,
    781 S.W.2d 312 (Tex. App.—Houston [1st Dist.] 1989, writ denied) .........35

*Cherokee Water Co. v. Forderhause*,
    641 S.W.2d 522 (Tex. 1982) ......................................................................11

*City of Hutchins v. Prasifka*,
    450 S.W.2d 829 (Tex. 1970). .....................................................................31

*City of White Settlement v. Super Wash, Inc.*,
    198 S.W.3d 770 (Tex. 2006) ......................................................................28

*Culver v. Smith*,
    74 S.W.2d 754 (Tex. Civ. App.—Austin 1934, writ ref'd)..........................21

*Dalisa, Inc. v. Bradford*,
    81 S.W.3d 876 (Tex. App.—Austin 2002, no pet.)..................................9, 10

*Daniels v. Walters*,
    No. 03-03-00375-CV, 2004 WL 741672 (Tex. App.—Austin,
    April 8 2004, pet. denied) (mem.op) ..........................................................35

*Downer v. Aquamarine Operators, Inc.*,
    701 S.W.2d 238 (Tex. 1985) ........................................................................6

*Enter. Leasing Co. of Houston v. Harris Cnty. Toll Rd. Auth.*,
    356 S.W.3d 85 (Tex. App.—Houston [1st Dist.] 2011, no pet.).............29, 31

*F.F.P. Operating Partners L.P. v. Duenez*,
    237 S.W. 3d 680 (Tex. 2007) ........................................................................20

*Graham v. Pazos de la Torre*,
    821 S.W.2d 162 (Tex. App.—Corpus Christi 1991, writ denied)................36

*Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*,
    793 S.W.2d 652 (Tex. 1990) ...............................................6, 9, 10, 11, 14, 19

*Guidry v. Nat'l Freight, Inc.*,
    944 S.W.2d 807 (Tex. App.—Austin 1997, no writ.) .............................11, 14

*Leyendecker & Assocs., Inc. v. Wechter*,
    683 S.W.2d 369, 375 (Tex. 1984) ................................................................17

*Morgan v. Compugraphic Corp.*,
    675 S.W.2d 729 (Tex. 1984) ........................................................................14

*N. H. Ins. Co. v. Tobias*,
    80 S.W.3d 146 (Tex. App.—Austin 2002, no pet.)......................................35

*Newell Recycling Co., v. E.P.A.*,
    231 F.3d 204 (5th Cir. 2000) .......................................................................21

*Nwokedi v. Unlimited Restoration Specialists, Inc.*,
    428 S.W.3d 191, (Tex. App.—Houston [1st Dist.] 2014, pet. denied).........17

*Pennington v. Singleton*,
    606 S.W.2d 682 (Tex. 1980) ..................................................................21, 22

*Pierce v. Reynolds*,
    329 S.W.2d 76 (Tex. 1959) ..........................................................................11

*Pirtle v. Gregory*,
    629 S.W.2d 919 (Tex. 1982). ........................................................................8

*Provident Life & Accident Ins. Co. v. Knott*,
    128 S.W.3d 211 (Tex. 2003) .....................................................................6, 28

*R. Commc'ns, Inc. v. Sharp*,
875 S.W.2d 314 (Tex. 1994) ........................................................................26

*Richards v. Comm'n for Lawyer Discipline*,
35 S.W.3d 243 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ................35

*S.O.C. Homeowners Ass'n v. City of Sachse*,
741 S.W.2d 542 (Tex. App.—Dallas 1987, no writ)....................................19

*Seguin v. Bexar Appraisal Dist.*,
373 S.W.3d 699 (Tex. App.—San Antonio 2012, pet. denied) ....................29

*Sherrod v. Moore*,
819 S.W.2d 201 (Tex. App.—Amarillo 1991, no writ) ..................................7

*State v. City of Greenville*,
726 S.W.2d 162 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)........................23

*State v. Durham*,
860 S.W.2d 63 (Tex. 1993) ..........................................................................28

*State v. Laredo Ice Co.*,
73 S.W. 951 (Tex. 1903) .........................................................................21, 22

*State v. Malone Serv. Co.*,
853 S.W.2d 82 (Tex. App.—Houston [14th Dist.] 1993,
writ denied)............................................................................................16, 17, 25

*Stroud v. VBFSB Holdings*,
901 S.W.2d 657 (Tex. App.—San Antonio 1995, writ denied),
*opinion withdrawn and superseded*, 917 S.W.2d 75
(Tex. App.—San Antonio 1996) ..................................................................11

*Tex. Cent. R. Co. v. Hannay-Frerichs & Co.*,
142 S.W. 1163 (Tex. 1912) .....................................................................21, 22

*Tex. Dep't of Transp. v. A.P.I. Pipe and Supply, LLC*,
397 S.W.3d 162 (Tex. 2013) ........................................................................31

*Tex. Mun. Power Agency v. Public Util. Comm'n of Tex.*,
  150 S.W.3d 579, (Tex. App.—Austin 2004),
  *rev'd in part sub nom. on other grounds*, 253 S.W.3d 184 (Tex. 2007).........7

*Tex. First. Nat'l Bank v. Ng*,
  167 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2005),
  pet. granted, *judgm't vacated, remanded by agr*. (Sept. 23, 2005) ...............36

*United States v. Bajakajian,*
  524 U.S. 321 (1998)..................................................................................22

*Washington v. Walker Cnty.,*
  708 S.W.2d 493 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) .....7

*Whitney Stores, Inc. v. Summerford,*
  280 F.Supp. 406 (D.S.C. 1968), aff'd 393 U.S. 9 (1968)..............................24

## Statutes

Tex. Gov't Code
  § 311.005(2)...........................................................................................16

Tex. Water Code
  § 5.013 ...................................................................................................29
  § 7.102 .............................................................................................*passim*
  § 7.032 ...................................................................................................15
  § 27.101 .................................................................................................16

## Rules

30 Tex. Admin. Code § 305.64(g) ........................................................................32

Tex. Civ. Prac. & Rem. Code
  § 51.014 ...................................................................................................9

Tex. R. Civ. P.
  § 166a(c) ..................................................................................................6

Tex. R. App. P.
  § 34.1 .....................................................................................................35

§ 34.5 ...........................................................................................................35

§ 34.6 ...........................................................................................................35

§ 49.6 .............................................................................................................4

**TO THE HONORABLE FIRST COURT OF APPEALS:**

The Appellee, State of Texas opposes Appellant, White Lion Holdings, L.L.C.'s Amended Motion for Panel Rehearing and revised Motion for Reconsideration *En Banc*.

## STATEMENT OF THE CASE

White Lion Holdings, L.L.C. ("White Lion") is attempting to utilize the motion for rehearing and reconsideration procedures to revise and redirect this appeal to include irrelevant issues never before raised, considered, or briefed before this Court issued its opinion on April 9, 2015. The new issues asserted by White Lion include (1) a multi-phased challenge of the District Court's order severing White Lion from a case pending against another party, Bernard Morello;[1] and (2) a restatement of arguments asserted to the District Court, but not to this Court, concerning various affirmative defenses (estoppel, waiver, laches) pled by White Lion and properly rejected by the District Court.[2] None of these issues merits reversal of this Court's opinion.

---

[1] White Lion presents the severance issue as several different issues in its revised Motion for Reconsideration *En Banc*, and as one issue with multiple subparts in its Amended Motion for Panel Rehearing. Nevertheless, because the arguments concerning severance are essentially identical between White Lion's motions, for economy, the State shall respond to each of White Lion's arguments in one consolidated response.

[2] White Lion does not include the affirmative defense issue in its revised Motion for Reconsideration *En Banc*.

## RESPONSE TO WHITE LION'S STATEMENT ON ORAL ARGUMENT

Oral argument is not necessary. White Lion's complaints amount to nothing more than an attempt to continue its delay coming into compliance. White Lion's motions for rehearing and reconsideration are based on points of error that have been long waived by White Lion, are based on erroneous and incorrect characterizations of the State's suit against two separate parties, and concern issues to be decided in a separate case pending against Bernard Morello, should Morello choose to appeal that matter. Nevertheless, if the Court believes that oral argument would be helpful and grants White Lion's request for oral argument, the State requests to be heard as well.

## STATEMENT OF FACTS

After White Lion ignored the Texas Commission on Environmental Quality's ("TCEQ's") attempts to obtain the company's compliance, the matter was referred to the Attorney General and the State brought suit in 2006. Bernard Morello was added to the lawsuit in 2007. On September 19, 2013, the State obtained summary judgment against White Lion for White Lion's failure to comply with a Compliance Plan that, at White Lion's request, was transferred to it by the TCEQ in July 2004. (CR 117-171). The Compliance Plan is part of a regulatory scheme governing long-term post closure care of a series of hazardous waste impoundments at White Lion's facility. (CR 86-115, CR 170, and CR 192-193). Contamination from the hazardous waste impoundments leaked from the impoundments into groundwater at the

facility. (CR 192). The Compliance Plan specifies the means and methods for treating and monitoring the groundwater contamination. (CR 117-148, CR 171, and CR 192-193.) For nearly ten years, White Lion ignored completely its obligations under the Compliance Plan. (CR 191-197).

When the District Court granted summary judgment, it also granted the State's conditional motion for severance (CR 554), which was included in the State's motion for summary judgment (CR 38-39), thus severing the proceeding against White Lion from the proceeding pending against Bernard Morello, the sole owner and operator of White Lion. The State's motion for severance was never challenged by White Lion at the District Court – not in White Lion's response to the State's motion for summary judgment (CR 278-286), not at the hearing on the motion for summary judgment, and not in White Lion's motion for new trial (CR 555-566). White Lion also did not raise the severance as an issue or point of error in its initial or reply briefs in this appeal. On October 24, 2014, White Lion filed its initial brief in this appeal. The State filed its response brief in this appeal on December 18, 2014, and, on January 9, 2015, White Lion filed its final reply brief.

After requesting and receiving a 30 day extension of time to file its motion for rehearing, White Lion filed its Motions for Panel Rehearing and Reconsideration *En*

*Banc* on May 26, 2015.[3] White Lion filed an Amended Motion for Panel Rehearing ("Motion for Rehearing") and revised Motion for Reconsideration *En Banc* ("Motion *En Banc*") on June 12, 2015 and again on June 15, 2015.[4] The arguments presented by White Lion in the multiple filings are generally similar, and although they are expanded upon in each filing, the State believes the core of White Lion's arguments have been carried forward and refined through each subsequent motion, including those filed on June 15. Therefore, the State is responding only to White Lion's last filed motions.

## A.    Timeline of the Morello Matter

To correct various factual omissions, namely White Lion's assertions that it "did not anticipate that the State" would continue its case against Morello (Motion *En Banc* at 5), the State offers the following for contextual reference.

After the District Court granted summary judgment against White Lion, discovery and settlement discussions continued in the Morello matter, including

---

[3] On May 22, 2015, White Lion filed a request for additional time to file the motions for rehearing and also filed a motion to supplement the record. Before the State could respond to White Lion's request for more time, this Court granted White Lion additional time to file the motions for rehearing and reconsideration, until June 12, 2015. On May 28, 2015, the State filed its opposition to White Lion's motion to supplement the record.

[4] White Lion did not seek leave to refile its motions on June 15, and the June 15 filings are therefore untimely and should be struck. Tex. R. App. P. 49.6. Furthermore, the certificates of service in the June 15 amended filings assert that copies of the briefs were served on counsel for the State by email on June 12. This is wrong. The State did not receive an e-filing notification from e-FileTexas until June 15. Nevertheless, the only changes between the June 12 and June 15 submissions appear to be to the organization and wording of various headings in the briefs.

additional written discovery, culminating with the deposition of Morello in September 2014.[5] The deposition transcript of Morello was certified on October 31, 2014, and three weeks later, on November 21, 2014 (seven weeks before White Lion's reply brief in this appeal was filed), the State filed a motion for summary judgment against Morello, seeking a hearing on December 16, 2014. However, the hearing was delayed when one of Morello's many counsel abruptly left the case (who was also counsel assisting in White Lion). *See e.g.*, Appellant Counsel's Motion to Withdraw, filed December 3, 2014. The hearing was ultimately held on February 19, 2015. The trial court released a letter granting the summary judgment, however, Morello resisted entry of a judgment. On April 14, after additional briefing and a hearing to consider Morello's objections, the trial court entered final judgment. On May 14, Morello filed a motion for new trial, to which the State responded. The trial court then denied Morello's motion for new trial.

---

[5] The deposition was delayed by Morello's refusal to agree to a date. Morello also sought to quash the deposition at the final hour.

## STANDARD OF REVIEW

### A. Order of Severance

A trial court has broad discretion to consider severance of joined cases. When reviewing a trial court's decision to grant severance, this Court considers whether the trial court has abused its discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

### B. Traditional Motion for Summary Judgment

When, as in this case, the trial court's order does not specify the grounds for granting final summary judgment, the trial court's order should be affirmed if any of the grounds presented in the motion is meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). The reviewing court may consider only evidence and arguments expressly presented at the summary judgment hearing. Tex. R. Civ. P. 166a(c).

**I.      White Lion has Waived its Arguments Regarding the District Court's Severance Order**

**A.      White Lion has Waited Until the Motion for Rehearing Stage to Challenge the Severance Order**

White Lion did not challenge the State's Conditional Motion for Severance or the District Court's Order of Severance. The first time White Lion raised severance as an issue or point of error in this appeal was in its motions for rehearing and reconsideration. "A point of error not preserved, is not before the appellate court for review." *Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987). An issue or assignment of error raised for the first time in an appellant's motion for rehearing in the Court of Appeals is too late to be considered. *See Washington v. Walker Cnty.*, 708 S.W.2d 493, 497 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Sherrod v. Moore*, 819 S.W.2d 201, 205 (Tex. App.—Amarillo 1991, no writ) ("It is well established that points of error raised for the first time in a motion for rehearing are too late and will not be considered."). A motion for rehearing does not afford a party an opportunity to raise new issues after the case has been briefed, argued, and decided on other grounds unless the error is fundamental." *Tex. Mun. Power Agency v. Public Util. Comm'n of Tex.*, 150 S.W.3d 579, 592 n.13 (Tex. App.—Austin 2004), *rev'd in part sub nom. on other grounds*, 253 S.W.3d 184 (Tex. 2007). "Fundamental error exists 'in those rare instances in which the record shows

the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas.'" *Id. citing Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982).

**B.      Trying to Avoid the Effect of its Waiver of the Severance Issue, White Lion Claims it Must be Heard Now Because of "Jurisdiction."  However, this is Not a Jurisdictional Claim that may be Raised at Anytime.  The District Court did Not Lack Jurisdiction to Issue the Severance Order and, Therefore, Challenges to that Order Must be Preserved and Presented on Appeal.**

White Lion asserts that severance was fundamental error, invalid, and void, depriving this Court of jurisdiction and making rehearing essential so that the Court can "reexamine" its jurisdiction and "resolve the procedural dilemma" of whether to dismiss for lack of jurisdiction or remand.  (Motion *En Banc* at 5, 12-16). The terms "fundamental error," "invalid," and "void"  are buzzwords associated with judgments issued by courts lacking jurisdiction.  Because jurisdiction can be raised at any time, including in a motion for rehearing, White Lion hopes to avoid being deemed to have waived its complaint about severance.  And by coupling these buzzwords with concerns about this Court's jurisdiction, White Lion seeks to heighten the sense that the Court must look at severance, even though severance was not objected to, not identified as an issue on appeal, not briefed—not even mentioned—until now.  But White Lion has conflated two distinctly different types of jurisdiction—jurisdiction in the trial court and jurisdiction in this Court—into a single, muddled, attempt to grab the Court's attention.

There is no question that the District Court had jurisdiction over the severance issue. Indeed, severance is committed to the sound discretion of district courts and overturned only for abuse of discretion. *Guar. Fed. Sav. Bank,* 793 S.W.2d at 658. Even if the severance was erroneous (an issue to be preserved for and pursued on appeal), the District Court's severance order was not issued without jurisdiction. It is not a void order that can be attacked at any time. White Lion waived any complaint about that order and cannot raise it in its rehearing motions.

Instead of focusing on the District Court's jurisdiction, White Lion relies on cases involving the jurisdiction of the Courts of Appeals, which is limited to review of final judgments and those interlocutory orders for which an appeal is expressly provided, such as those listed in Section 51.014 of the Civil Practices and Remedies Code. According to White Lion, those cases stand for the proposition that an appellate court may lack jurisdiction over a matter improperly severed, such as happened in *Dalisa, Inc. v. Bradford*, 81 S.W.3d 876 (Tex. App.—Austin 2002, no pet.) when the trial court severed the Plaintiff's declaratory judgment claims from the attorney's fees to be assessed in accordance with the judgment on those claims. *Id.* at 880. However, *Dalisa* does not stand for the proposition that the trial court in *Dalisa* lacked jurisdiction to issue the erroneous severance, any more than the District Court in this case (though here, severance was proper). The severance in

*Dalisa* was error, but it was not void. White Lion cites no case in which severance was allowed to be raised only at the motion for rehearing stage.

**C.      The Cases that White Lion Relies on Actually Demonstrate that Severance is an Issue that can be Waived**

White Lion relies heavily on *Guar. Fed. Sav. Bank*, 793 S.W.2d 652. But that reliance is misplaced on the question of whether complaints about severance can be waived. Although it reversed most of the judgment and remanded to the trial court, the Supreme Court of Texas expressly affirmed "that portion of the judgment of the Fifth Court of Appeals" regarding severance. *Id.* at 659. The Supreme Court is referring to the Fifth Court of Appeals' overruling of Guaranty's third point of error, which claimed that the trial court erred in severing one set of claims against Guaranty from the claims against third-party defendants. *See Guar. Fed. Sav. & Loan Ass'n v. Horseshoe Operating Co.*, 748 S.W.2d 519, 530-31 (Tex. App.—Dallas 1988, writ granted), *aff'd in part, rev'd in part sub nom. Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652 (Tex. 1990). The Fifth Court held that even though Guaranty claimed that the severance prejudiced it,

> Guaranty, however, filed no response or objection to Horseshoe's motion for severance. We conclude that if Guaranty considered severance would act to its prejudice, Guaranty should have made that fact known to the trial court before it ordered severance. Hence, we conclude that the trial court did not abuse its discretion in ordering severance when Guaranty never told the trial court that severance acts to Guaranty's prejudice. Consequently, we conclude that the trial court did not err in ordering severance . . .

*Id.* at 531.

Although the analysis did not involve waiver, in another case relied on by White Lion, the appellate court noted that "[t]he severance was granted over the objections of appellant." *Stroud v. VBFSB Holdings*, 901 S.W.2d 657, 658 (Tex. App.—San Antonio 1995, writ denied), *opinion withdrawn and superseded*, 917 S.W.2d 75 (Tex. App.—San Antonio 1996).

Complaints about severance can be—and in this case were—waived. That core principle was noted, albeit in dicta, more than a half century ago when the Supreme Court of Texas stated that "[t]he rule against splitting causes of action . . . is for the benefit of and may be waived by the defendant." *Pierce v. Reynolds*, 329 S.W.2d 76, 78 (Tex. 1959). This Court should not accept White Lion's invitation to disturb that principle.

## D. White Lion's Excuse for Not Earlier Challenging the Severance is Disingenuous

Trial courts have jurisdiction to issue severance orders. Indeed, severance is a matter committed to the trial court's discretion and may not be disturbed on appeal absent a showing of abuse of discretion. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. There was no fundamental error here. It is common (and expected) to sever a single defendant from a case with multiple defendants when summary judgment is granted against one defendant so that case may be appealed. *See Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525-526 (Tex. 1982); and *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 812 (Tex. App.—Austin 1997, no writ.) ("Where

summary judgment in favor of a single defendant is proper in a case with multiple defendants, severance of that claim is also proper so that it may be appealed.").[6]

White Lion had multiple opportunities to challenge the severance order at the trial court and in this appeal, and passed on them each time. The only party that prevented this Court from earlier addressing the severance was White Lion. As an excuse for not previously addressing the issue, White Lion asserts it "did not anticipate that the State" would continue to press its case against Morello "because at the time of briefing [this appeal] the State had not filed its" motion for summary judgment against Morello. (Motion *En Banc* at 4, 5, and 8; Motion for Rehearing at 2, 4, and 5). This is a misstatement.

White Lion was not ignorant of the State's intentions regarding its case pending against Morello. White Lion and its counsel (the same counsel representing Morello) were aware of the State's position before and throughout its appeal, including during briefing of issues. The claims against Morello remained pending in the trial court after White Lion was severed. Morello was served with discovery early in the case and again in 2014, including the deposition of Morello in late

---

[6] White Lion also asserts that the severance was untimely because Tex. R. Civ. P. 41 prohibits severance after the case is submitted to the trier of fact. (Motion *En Banc* at 8, fn. 2). White Lion cites to no authority for this erroneous argument. If true, the legion of decisions affirming severance in multi-party cases after summary judgment would be void. Furthermore, parties seeking summary judgment in multi-party cases would have to first sever, then obtain summary judgment. If they did not prevail on summary judgment, they might have to seek to rejoin the case, which is hardly an efficient use of judicial resources.

September 2014.  Finally, with specific respect to White Lion's statement that it was unaware of the State's motion for summary judgment against Morello during this appeal, that motion was filed in November 2014,[7] some <u>seven</u> weeks before White Lion filed its final reply brief in this appeal.

Summary judgment against White Lion was proper, and the District Court did not commit fundamental error or abuse its discretion in severing the State's claims against White Lion from those against Bernard Morello.  White Lion never challenged nor raised the issue of improper severance until its motions for rehearing and reconsideration.  Therefore, White Lion has waived this issue on appeal.

**II.  Even if the Court Determines White Lion did not Waive its Arguments, the District Court's Severance was Proper Because the State's Suit was Against Two Separate Parties that Each Committed Independent Violations**

**A.  Severance Orders, such as that Issued by the District Court in this Case, are Common and Appropriate**

Rule 41 of the Texas Rules of Civil Procedure expressly provides that "[a]ny claim against a party may be severed and proceeded with separately."  The rule affords trial courts broad discretion in the matter of severance, and the trial court's

---

[7] White Lion's implied notion that the State waited in the weeds to file its motion against Morello until after White Lion filed its initial brief in this appeal is erroneous.  The State filed its motion in the other case as soon as the State was able to assemble affidavits and other evidence, following Morello's deposition in late September (including the final deposition transcript which was not certified until October 31, 2014, a week after White Lion's initial brief in this matter was filed). The timing of the filing of White Lion's initial brief and other briefs in this appeal was irrelevant to the Morello matter.

ruling will not be disturbed unless it has abused its discretion. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. Courts typically allow single defendants to be severed from a case with multiple defendants when summary judgment is proper and granted as to one defendant. *See e.g., Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733-734 (Tex. 1984) (finding no error in severance of judgment entered against one of two defendants in tort case alleging indivisible injury against two wrongdoers); *Guidry*, 944 S.W.2d at 812 (no error in severance of one summary judgment entered in favor of one defendant in tort case brought by plaintiff against multiple defendants for single injury); and *Arredondo v. City of Dallas*, 79 S.W.3d 657, 665 (Tex. App.—Dallas 2002, pet. denied) (severance of one plaintiff that obtained summary judgment in case involving sixteen plaintiffs, all with identical claims against the City, was proper).

Courts may also examine the following three factors when determining if severance is proper: (1) the controversy involves more than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts or issues. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. White Lion relies upon these factors and, to make them fit, argues that the claims against Morello and White Lion are too interwoven to be separated and that severance improperly splits a single statutory violation that is

based on identical conduct. (Motion *En Banc* at 2). White Lion also asserts that the State did not seek judgment against Morello "based on his individual, independent conduct" and that it was "seeking the identical statutory penalties that were awarded in the judgment against White Lion, based upon the same violations." (Motion *En Banc* at 4). This is a significant mischaracterization of the State's action.

**B.** **Section 7.102 of the Texas Water Code is Not Limited to a Single Person Per Non-Compliant Event**

White Lion and Morello are two different persons, and each took distinct and separate actions or inactions to cause the violations alleged by the State. The core of the State's claim against each party is based on Section 7.102 of the Texas Water Code, which provides:[8]

> A person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit relating to any other matter within the commission's jurisdiction to enforce, ... **shall be assessed for each violation** a civil penalty not less than $50 nor greater than $25,000 **for each day of each violation** as the court or jury considers proper. **Each day of a continuing violation is a separate violation.**

Tex. Water Code. § 7.102 (emphasis added). The provision imposes penalties on individual persons rather than assessing a collective penalty per non-compliant event. Each actor proven to have caused, suffered, allowed, or permitted a violation is subject to a penalty.

---

[8] The State also had a claim for injunctive relief under Section 7.032 of the Texas Water Code, which it chose to pursue against White Lion only.

White Lion interprets Section 7.102 as limiting the State to enforcement against only one single person. (Motion *En Banc* at 11). This is an erroneous interpretation. The term "person" includes "'a corporation…and any other legal entity,' which includes natural persons. Tex. Gov't Code Ann. § 311.005(2)." *State v. Malone Serv. Co.,* 853 S.W.2d 82, 84 (Tex. App.—Houston [14th Dist.] 1993, writ denied). The statute encompasses all persons that commit a violation, and each may be held individually liable for their own acts. The State may properly bring separate enforcement actions for a non-compliant event against each and every actor responsible, including a corporate entity and its principals. *See Malone Serv. Co.,* 853 S.W.2d at 83-85 (affirming judgment against a corporation, its president, and its plant manager for their actions participating in or directing violations of a deep well injection permit; the relevant statutory provision at the time, Tex. Water Code § 27.101, is similar to § 7.102 in that liability for a penalty is triggered when a "person" violates any permit provision). As stated by the court in *Malone Service* with respect to the State's case against individual corporate actors, "[l]iability is based on the agent's own actions, not his status as an agent. (citation omitted). Indeed, in federal environmental cases, courts have applied the personal

participation doctrine to 'persons' who are not permit holders." *Malone Serv. Co.*, 853 S.W.2d at 85.[9]

White Lion's attempt to distinguish a limited liability company from other corporate entities is a distinction without a difference under Tex. Water Code § 7.102. The corporate shield afforded members of an LLC does not deflect the liability from those members, officers, and other agents that take personal action to violate or direct the violation of state environmental laws or permits. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) (it is the general rule in Texas that an individual is personally liable for wrongful acts which he directs, participates in, or has knowledge of and assented to during his employment); and *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 201 and 210 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (affirming judgment against president of an LLC in tort action based on knowing participation in wrongful acts).

---

[9] *Malone Service* contradicts White Lion's assertion that no court has held employees liable for statutory compliance failures. (Motion for Rehearing at 1). White Lion also includes the term "breach of contract" in its sentence. However, this case is not a contract action, it is a statutory enforcement action for violations of a Compliance Plan issued by the TCEQ and related regulations.

## C. The Suits Against White Lion and Morello are Separate and Distinct

In this matter, the claims against White Lion and Morello may be under the same statute and concern the Compliance Plan, but the cases are not identical and are based on completely different conduct and legal principles. They could have been brought as two separate cases. The case against White Lion is simpler than that against Morello—it concerns White Lion's direct and continuing failure to comply with the Compliance Plan. The case against Morello is somewhat more complicated and concerns Morello's deliberate interference with and failure to cause, allow, or permit his company to perform its duties under the Compliance Plan. The suit against Morello necessitated a detailed investigation into his own actions, conduct, and omissions, and also concerned a different period of time.[10] As highlighted by White Lion in its brief, this examination presents a variety of factual and legal questions not related to White Lion. (Motion *En Banc* at 2-3 and 10, and Motion for Rehearing at 8, listing a series of purported legal questions raised by the case against Morello). These questions are not intertwined with the action against White Lion, and are best answered in the case pending against Morello, should he choose to appeal. Contrary to White Lion's belief, the State will not avoid those

---

[10] White Lion is correct that the State did not plead or attempt to "pierce the corporate veil." (Motion for Rehearing at 5). The State's claim was based on its enforcement authority under Chapter 7 of the Texas Water Code.

legal issues and will address them in any appeal filed by Morello. (Motion for Rehearing at 8).

The severance order was proper to separate and make final the action against White Lion from that pending against Bernard Morello and did not result "in duplicitous trials of interwoven or identical issues." *S.O.C. Homeowners Ass'n v. City of Sachse*, 741 S.W.2d 542, 544 (Tex. App.—Dallas 1987, no writ) (severance was proper). Critically, a final judgment against White Lion was required so that the injunctive relief awarded (*i.e.*, ordering White Lion to comply with the Compliance Plan) could proceed unanchored by the more complicated issues likely to be presented in the case proceeding against Morello. Further delay in obtaining such relief prejudices the State's ability to enforce the Compliance Plan and its statutes. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d at 658 (The reasons for a proper grant of severance "are to do justice, avoid prejudice and further convenience."). Even if the case was not severed, there would have been no change in the outcome—the case would have proceeded against Morello as it did. The only difference would have been the significant prejudice to the State in seeking finalization of its injunctive relief against White Lion and further delays in its efforts to achieve compliance in this matter.

**D.      There is No Apportionment of Liability under Section 7.102 of the Texas Water Code**

White Lion also argues that each party cannot be separated because the court must apportion liability between the two actors. (Motion *En Banc* at 10-11). White Lion cites to *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680 (Tex. 2007) in support. However, *F.F.P.* dealt with a statute that provided for apportionment of damages. It is irrelevant here. The White Lion matter is not a case concerning damages, and there is no apportionment of liability under Section 7.102 of the Texas Water Code. Each person is either liable for his own conduct and violation, or he isn't, and the penalties are based upon each person's own individual conduct within the ranges set by statute.

**III.      The Severance was Proper and the Court Retains Jurisdiction to Consider this Appeal**

In its opinion, this Court rejected all of White Lion's arguments. Now White Lion seeks rehearing on the basis of improper severance, an unpreserved and meritless ground. Because White Lion's severance complaint is waived and wrong, this Court should not have to reach the arguments regarding whether an appellate court finding improper severance should dismiss for lack of jurisdiction or remand to the lower court. (Motion *En Banc* at 12-16; Motion for Rehearing at 9-11). For all the attention that White Lion devotes to it, there is very little practical difference between dismissal for lack of jurisdiction or vacatur of the severance order and

remand. Even White Lion considers the question of how the Court's judgment should read to be one of "conflict" that is "emerging." (Motion *En Banc* at 13-14).

Moreover, neither choice—dismissal or remand—suits this case. The proper disposition has already been made. White Lion's rehearing motions should be rejected and the Court's opinion and judgment should stand.

## IV. The Civil Penalties Assessed are not Unconstitutionally Excessive and Penalties Assessed Against two Separate Parties is Not a Double Recovery

White Lion alleges that the separate penalties collected from White Lion and Morello, when aggregated, constitute a double recovery, an excessive fine, and violate due process. White Lion's arguments are unavailing.

## A. The District Court Awarded Only the Minimum Penalty Permitted by Section 7.102 of the Texas Water Code

Civil penalties may be subject to excessive fines review under both the Texas and United States Constitutions. *See Newell Recycling Co. v. E.P.A.*, 231 F.3d 204, 210 (5th Cir. 2000); and *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980). Texas courts look to the minimum statutory penalty as the basis for an excessive fines review. *See Tex. Cent. R. Co. v. Hannay-Frerichs & Co.*, 142 S.W. 1163, 1166 (Tex. 1912); *State v. Laredo Ice Co.*, 73 S.W. 951, 953 (Tex. 1903); and *Culver v. Smith*, 74 S.W.2d 754, 760 (Tex. Civ. App.—Austin 1934, writ ref'd). Here, only the minimum penalty was awarded, negating any concern over excessive fines. *See Newell Recycling Co.,* 231 F.3d at 210 (analyzing a penalty statute

authorizing civil penalties up to $25,000 per day, the court definitively stated that "[n]o matter how excessive (in lay terms) an administrative fine may appear, if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment.").

In performing a review for whether a penalty is excessive, the court looks not only to the statutory enactment (legislative deference), but also may consider (1) if the penalty actually imposed is disproportionate to the offense, *see Pennington*, 606 S.W.2d at 690; (2) whether the penalty is fixed with reference to the object it is to accomplish, *see id.* and *Laredo Ice Co.*, 73 S.W. at 953; and (3) the number or frequency of violations, *see Hannay-Frerichs & Co.*, 142 S.W. at 1166. Federal courts have derived a similar review, sometimes referred to as proportionality review. *See United States v. Bajakajian*, 524 U.S. 321, 334-340 (1998) (holding civil forfeiture excessive as disproportionate to underlying record-keeping violation). The fact that a civil penalty may be imposed against an actor for a long period of time or for multiple violations does not render the penalty unconstitutionally excessive.

As discussed above, violations of TCEQ permits, orders, and related regulations are subject to a civil penalty of not less than $50 nor more than $25,000 per day of violation. Tex. Water Code § 7.102. The assessment of at least a minimum penalty for each violation and for each day of each violation is mandatory,

not discretionary. *See State v. City of Greenville*, 726 S.W.2d 162, 169-70 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

White Lion was assessed a civil penalty for two violations,[11] one for violation of the Compliance Plan as a whole from July 23, 2004 (the date the Compliance Plan was transferred to White Lion) until July 29, 2013 (the date of an inspection of the White Lion facility completed prior to the filing of the motion for summary judgment), and one for failing to provide financial assurance as required by the Compliance Plan and related TCEQ regulations from October 6, 2004 until July 29, 2013 (CR 29-30, and CR 195-196); which amount to an aggregate civil penalty of $325,600 against White Lion[12]—$164,700 ($50 x 3294 days) for violation of the Compliance Plan, and $160,900 ($50 x 3218 days) for violation of the financial assurance requirements.[13]

---

[11] More violations could have been included for each discrete violation of a term, limitation, and condition of a Compliance Plan.

[12] The State could have received additional continuing violations up to the date of the hearing, however, the State did not revise its motion during the summary judgment hearing. *See* CR 30 at fn. 53.

[13] White Lion was also ordered to pay $129,464.15 in unpaid annual hazardous waste facility fees, and the State's attorney's fees in the amount of $40,800. Contrary to White Lion's assertion, the State has yet to "recover" these amounts from White Lion. (Motion for Rehearing at 11). It is also noted that White Lion's allegation of "$760,494" in "fines" is erroneous. The District Court assessed against White Lion civil penalties in the aggregate amount of $325,600 for the two violations. The Court assessed against Morello civil penalties in the aggregate amount of $367,250 for two violations (covering different periods of non-compliance). This discussion is provided, not as a concession by the State that the two cases should even be compared, but to illustrate that the numbers provided by White Lion simply do not add up.

That the violations continued for so long a period of time was the fault of White Lion. White Lion was responsible for compliance, and its compliance obligations were triggered the day the Compliance Plan was transferred to it by the TCEQ. Instead of complying, it chose to ignore the costs of compliance for nearly a decade by:

- ignoring the State (and the promises it made to the State to come into compliance and file amendments to alter the Compliance Plan (CR 266-267));
- never sampling a single drop of groundwater;
- never submitting a groundwater monitoring report to the TCEQ;
- removing all monitoring and treatment well equipment during the course of this litigation; and
- never posting financial assurance.

The penalty assessed against White Lion was not excessive. *See Whitney Stores, Inc. v. Summerford*, 280 F.Supp. 406, 411 (D.S.C. 1968), aff'd 393 U.S. 9 (1968) (repeated violations resulting in higher fines are the fault of the actor, not the statute).

**B.** **That White Lion and Morello are Related Parties does not Make a Recovery Against Each Party under Section 7.102 of the Texas Water Code an Impermissible Double Recovery**

That the State also later obtained a judgment against White Lion's principal does not constitute a double recovery because the actions were separate and distinct. The civil penalty statute imposes a civil penalty within the statutory range on *each* "person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit relating to any other matter ...." Tex. Water Code § 7.102. When there

are multiple actors who each independently caused violations to occur, it is appropriate to assess penalties against each for their own conduct to cause, suffer, allow, or permit the violations. That the actors may be related by virtue of a corporate connection does not make the penalty excessive or a double recovery. *See Malone Serv. Co.,* 853 S.W.2d at 84-85.

No federal or state constitutional issues are presented and White Lion raises no issue suggesting that reversal is warranted.

**C.    Severance did not Deprive the District Court an Opportunity to Review the Individual Liability of Each Party**

White Lion asserts that by severing the two cases, White Lion (and Morello) were deprived of an opportunity to "address the correct assessment and or apportionment of liability in either case." (Motion for Rehearing at 14). This is erroneous. White Lion was able to (and did) challenge its liability and the penalty assessed against it at the summary judgment hearing and also in prior briefing in this appeal. The District Court correctly analyzed White Lion's liability and assessed the minimum penalty allowed as stipulated. Morello had the same opportunity in his case, and will again on appeal. There is no apportionment of liability or penalties under Section 7.102 of the Texas Water Code. Each person, if found liable, is responsible for his own penalty.

**D. White Lion has not been Deprived of an Ability to Litigate its Defense**

White Lion asserts that a penalty is excessive and unconstitutional if "it effectively deprives a citizen of the ability to litigate his defense to such penalty." (Motion for Rehearing at 13). As discussed above, such is not the case when the statutory minimum penalty is imposed. White Lion cites to *R. Commc'ns, Inc. v. Sharp*, 875 S.W.2d 314 (Tex. 1994) in support of its argument. However, this case concerns a taxpayer's challenge to additional tax imposed upon it following an audit and hearing by the Comptroller of Public Accounts. The case is irrelevant here, which is an action concerning the imposition of minimum statutory penalties imposed following a finding of liability. Furthermore, the fact that two different, but related parties, are each independently assessed penalties does not mean such penalties can be aggregated for purposes of constitutional review.

Finally, White Lion (and Morello) have aggressively defended against the State's action, and have challenged and opposed nearly every step in the State's action in both cases. White Lion (and Morello) have at various times in this proceeding employed at least eight attorneys in support of its defense. White Lion cannot credibly assert that it has been deprived of its defense. That a party elects to expend significant sums challenging the State's action does not absolve it from paying whatever penalties are assessed for its continuing non-compliance, nor from complying with the State's laws, regulations, and permits. Compliance with the law

is not a choice and a party may not elect to spend its resources on fighting compliance rather than on actual compliance. In other words, a person must comply, but may defend.

**V. White Lion Provides No Basis to Overturn this Court's Decision Based on Arguments Concerning Estoppel, Waiver, and Laches Defenses Properly Rejected by the District Court and Not Previously Briefed to this Court**

In its Amended Motion for Panel Rehearing,[14] White Lion argues, for the first time in this appeal, that the District Court failed to consider various affirmative defenses asserted by White Lion, including that the State is estopped from recovering civil penalties from White Lion because the State (1) failed to mitigate its damages by not filing a claim against a financial assurance policy held by a former owner of the White Lion property; and (2) the State delayed in obtaining a judgment in the case. (Motion for Rehearing at 15). These issues were briefed by the parties, considered by the District Court, and properly rejected.

**A. White Lion has Waived its Arguments Regarding Waiver, Estoppel, and Laches**

White Lion did not raise its defenses of estoppel, waiver, or laches as an issue or point of error in any brief filed before its Motion for Rehearing. White Lion does not assert or raise an issue of fundamental error on these issues. *See* case law cited in I.A. above. Therefore, White Lion has waived these issues on appeal.

---

[14] White Lion did not assert these arguments in its Motion *En Banc*.

## B. White Lion's Defenses were Considered and Properly Rejected by the District Court

White Lion asserted its defenses of waiver, estoppel, and laches in its response to the State's motion for summary judgment (CR 285-286) and in an amended answer filed one week before the summary judgment hearing (CR 531-534). The State responded to each defense. (CR 536-537). During oral arguments concerning White Lion's motion for continuance, the State also addressed the District Court's question concerning delay in the proceedings. (RR 16).

The District Court did not provide reasons for granting summary judgment, and therefore, the District Court's decision may be affirmed if any valid reason supports the judgment. *See Provident Life & Accident Ins. Co.*, 128 S.W.3d at 216. Here, the evidence was overwhelming that White Lion ignored its obligations under the Compliance Plan for nearly ten years, and summary judgment was proper.

The District Court was also correct to dismiss White Lion's defenses for the reasons articulated by the State. It is well settled that when a government is exercising its governmental powers, affirmative defenses such as waiver, estoppel or laches do not apply when the activity complained of is a governmental function. *See State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993) ("[T]he State in its sovereign capacity, unlike ordinary litigants, is not subject to the defenses of limitations, laches, or estoppel."); *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 776 (Tex. 2006) (a governmental unit "will not be estopped if doing so would

interfere with its ability to perform governmental functions"); *Enter. Leasing Co. of Houston v. Harris Cnty. Toll Rd. Auth.*, 356 S.W.3d 85, 90 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (affirmative defenses of waiver, estoppel, and laches do not apply when the activity complained of is a governmental function); *Capitol Rod & Gun Club v. Lower Colo. River Auth.*, 622 S.W.2d 887, 896 (Tex. App.—Austin 1981, writ ref'd n.r.e.) ("[T]he general rule is that where a unit of government is exercising its governmental powers, it is not subject to estoppel or laches."). Contrary to White Lion's assertion, the TCEQ's enforcement of state environmental laws is undeniably a governmental function. *See* Tex. Water Code § 5.013.[15]

The rationale of this well-settled doctrine is especially evident with matters concerning environmental protection. The State passed comprehensive environmental protection laws to ensure the health, safety, and welfare of the public and the environment. The State is empowered to enforce compliance with such laws. The environmental protection laws and the State's power to enforce them would be nullified if polluters were allowed to use delay in compliance or delay in prosecution

---

[15] Furthermore, even if the defenses could be raised against the State in this matter, the doctrine of "unclean hands" would bar their assertion. This doctrine requires that one who comes seeking equity must come with clean hands. *See Seguin v. Bexar Appraisal Dist.*, 373 S.W.3d 699, 713 (Tex. App.—San Antonio 2012, pet. denied). Here, it is undisputed that White Lion did not maintain and operate the groundwater monitoring and remediation system as required by the Compliance Plan, nor did White Lion monitor and treat the contaminated groundwater as required by the Compliance Plan. Indeed, during White Lion's ownership, it caused, suffered, allowed, or permitted the entire groundwater remediation and monitoring system to be removed or destroyed. Thus, it cannot be said that White Lion has come in equity with clean hands.

as a sword to defeat the State's efforts to enforce compliance.

Furthermore, White Lion and White Lion alone is the only entity that could cut off continuing penalties by coming into compliance. White Lion instead chose to ignore the State, and during the course of the litigation, allowed the groundwater monitoring wells and groundwater treatment system to be destroyed or removed from the facility. (CR 193-196). Instead of filing for an amendment to alter the terms of the Compliance Plan as it promised to submit in 2004 (CR 267), White Lion decided it would be cheaper and less onerous to simply continue to ignore its obligations for as long as possible. White Lion cannot use its own delay in complying or defending this matter as an excuse to avoid liability for its blatant noncompliance. That this matter has been pending in court for an extended period of time in no way prevented White Lion from earlier coming into compliance, such as by filing an amendment with the TCEQ to alter the Compliance Plan.[16]

### 1. The Limited Exception Applying Estoppel Against the Government is Not Applicable Here

White Lion argues that the "Supreme Court has held that estoppel may apply against the government." (Motion for Rehearing at 15). White Lion is correct that courts have carved out a limited exception where a governmental unit may be

---

[16] To the extent White Lion's estoppel arguments may be construed as an argument that the State's claims are barred for failure to mitigate damages, such argument is invalid because this case is not about damages, but rather civil penalties, unpaid hazardous waste fees, and injunctive relief.

estopped "in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *Enter. Leasing Co.*, 356 S.W.3d at 90 (*citing City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex. 1970)). However, this limited exception is not applicable here.

White Lion cites to *Tex. Dep't of Transp. v. A.P.I. Pipe and Supply, LLC*, 397 S.W.3d 162, 170 (Tex. 2013) for the prospect that estoppel may apply against the State. (Motion for Rehearing at 16). However, the Court in *API* refused to apply estoppel against the State, even though the State had purportedly acquiesced to the terms of a later judgment. For the exception to apply, the Court required a finding that the government "acted deliberately to induce a party to act in a way that benefitted the government," and that a governmental function would not be impaired by estoppel, neither of which were met. *A.P.I Pipe and Supply*, 397 S.W.3d at 170.

This matter is much simpler than *API*. It is a straight-forward enforcement case. The State never acquiesced to White Lion's noncompliance. There is no evidence that the State "acted deliberately to induce" White Lion to remove or destroy the groundwater monitoring wells and groundwater treatment system, to not sample one single drop of groundwater, to not submit a single report to the TCEQ, to not submit an amendment to the Compliance Plan as White Lion promised it would, and to continue to not comply for nearly a decade.

White Lion is a defendant who egregiously and deliberately ignored its clear

obligations, and who, to this day, continues to refuse to accept its obligations to comply. To hold that estoppel applies in this case due to litigation delays in arriving at a final judgment would encourage defendants across the State to give up compliance with permits, orders, and regulations and simply sit out a subsequent enforcement action brought by the State until ultimately forced to comply by a court, following exhaustion of all appeals. Such a procedure would eviscerate completely the State's ability to enforce its environmental statutes and regulations and to prevent pollution.

White Lion's argument presents no fact issue or basis to overturn this Court's opinion. White Lion must be forced to comply and further delays in arriving at that conclusion must come to an end.

## C. White Lion's Renewed Assertions About the TCEQ's Obligations with Respect to Financial Assurance Mechanisms are Wrong

White Lion recasts a failed argument made in its initial brief concerning TCEQ's purported failure to file a claim on a former owner's financial assurance mechanism. (Appellant's Brief at 20 and Motion for Rehearing at 16). White Lion's statement reflects a continued misunderstanding of its obligation to provide financial assurance. White Lion acquired the facility and had the Compliance Plan transferred from the prior owner to itself. Within six months of acquiring the facility, White Lion was obligated to provide a new financial assurance mechanism in its name—something White Lion admits it never did. 30 Tex. Admin. Code 305.64(g);

(CR 176, 183, and 196).

White Lion argues that the TCEQ could have brought the facility into compliance sooner (admitting again the continued non-compliance) had the TCEQ filed a claim under the prior owner's policy. (Motion for Rehearing at 16). However, the purposes of a financial assurance mechanism is not to bring a facility into compliance (that is the purpose of the TCEQ's and the State's enforcement authority), but to insure that the long-term treatment and monitoring obligations can continue in the event the current owner is no longer able to perform. *See* 30 Tex. Admin. Code chapter 37, Subchapter B. For example, after the former owner went bankrupt, had White Lion not purchased the facility and the property remained abandoned, at that time it may have been appropriate for the State to call upon the policy to fund continued monitoring and treatment. White Lion's argument presents no fact issue or basis to overturn this Court's opinion.

**D.** **White Lion's Assertion that the TCEQ Interfered with White Lion's Discussions with the U.S. Environmental Protection Agency are Erroneous**

White Lion also reasserts that the TCEQ somehow "interfered with White Lion's efforts to work with the EPA [U.S. Environmental Protection Agency] to devise a less cumbersome plan." (Motion for Rehearing at 18). What exactly White Lion means by a "less cumbersome plan" is unclear. Furthermore, the TCEQ is the entity that issued and that has authority over the Compliance Plan. The EPA has no

jurisdiction at the facility or over the Compliance Plan. (CR 539-540). The EPA confirmed this in its correspondence dated April 16, 2007. (CR 275-277). White Lion's argument is erroneous and provides no basis to overturn this Court's opinion.

## VI. White Lion Improperly Cites to Documents Not in the Appellate Record

On May 22, 2015, White Lion filed a motion to supplement the record to which the State responded on May 28, 2015. The State incorporates by reference its response and supplements it as set forth herein.

White Lion did not secure a ruling on its motion, but nevertheless has cited to various documents referenced in four Appendices, not part of the record in this appeal (supplemented or otherwise), which were included with White Lion's original motions for rehearing/reconsideration filed May 26. The documents referenced are from filings in the case pending against Bernard Morello, from which this matter was severed following entry of judgment. The documents were filed after judgment was granted by the District Court in this matter, and were never before the District Court.[17] White Lion's inclusion of the documents as an appendix to its motion constitutes an improper attempt to create a new trial court record, and the appendices and all references to them must be struck and removed from the record.

---

[17] Curiously, in White Lion's request to supplement the record in this case with filings in the Morello matter (which the State opposes), it omits the briefing concerning Morello's objections to the trial court's ruling, the State's responses to those motions, the State's response to Morello's motion for new trial, and the trial court's denial of the motion for new trial. If this Court were to entertain White Lion's efforts to supplement the record with filings from the Morello matter, it seems the full record should be included.

When a court severs a cause, "[a]ll documents filed in a cause <u>before</u> a severance are part of the record of the severed cause." *N.H. Ins. Co. v. Tobias*, 80 S.W.3d 146, 148 (Tex. App.—Austin 2002, no pet.) (emphasis added). The appellate record consists only of documents submitted in the trial court in the cause at issue, and does not include evidence or documents subsequently submitted in other severed causes, even if related. *See* Tex. R. App. P. 34.1, 34.5, and 34.6; and *Daniels v. Walters*, No. 03-03-00375-CV, 2004 WL 741672 *1 (Tex. App.—Austin Apr. 8, 2004, pet. denied) (mem. op.). Contrary to White Lion's assertion, severance did not prevent either court from "having the full record before it." (Motion for Rehearing at 14). The full record up to severance was properly before the District Court in this matter. The trial court in the Morello matter will have in its record all documents filed in the case up to the moment when the judgment against him is final.

Tex. R. App. P. 34.5 provides the appellate court wide discretion for parties to supplement an appellate record, but the rule does not allow the creation of a new trial court record. *See Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 251 (Tex. App.—Houston [14th Dist.] 2000, no pet.). It is not error for an appellate court to deny supplementation of a record after it issues an opinion. *See Chapman v. Mitsui Eng'g and Shipbuilding Co.,* 781 S.W.2d 312, 318 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (supplemental transcripts will not be allowed after a court has written its opinion and rendered its judgment); and *Tex. First Nat'l*

*Bank v. Ng*, 167 S.W.3d 842, 866 (Tex. App.—Houston [14th Dist.] 2005, pet. granted), *judgm't vacated, remanded by agr.* (Sept. 23, 2005). It is also not error for an appellate court to deny supplementation of materials not at issue nor admitted as evidence at the time the trial court made its ruling. *See Graham v. Pazos de la Torre*, 821 S.W.2d 162, 165 (Tex. App.—Corpus Christi 1991, writ denied) (refusing to supplement the record with a bankruptcy order from a separate proceeding when it was not issued or admitted as evidence when the trial court made its ruling).

None of the documents White Lion includes in its appendices was before the District Court at the time of its decision. Furthermore, White Lion has not authenticated the documents or otherwise asked this Court to take judicial notice of the documents. It is improper for the Court to allow supplementation at this late stage. To do so would impermissibly create a new trial court record. The State requests that the appendices be struck from the record, and that all references to and quotations from those documents in White Lion's motions be similarly struck and excluded.

## CONCLUSION AND PRAYER

This Court did not err in issuing its opinion affirming the District Court's grant of summary judgment against White Lion. The District Court did not err in issuing the summary judgment and did not err in severing White Lion from the case still pending against Bernard Morello. Finality was needed so that the injunctive relief afforded by the District Court requiring that White Lion come into compliance could move forward expeditiously and unhindered by the separate and somewhat more complicated proceeding pending against Morello.

Therefore, the State of Texas respectfully requests that this Court deny White Lion's Motion for Panel Rehearing (as amended), Motion for Reconsideration *En Banc* (as amended), and Motion to Supplement the Record. The State also requests that the appendices containing documents from the Morello matter and included with White Lion's motions be struck and removed from the record.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

JON NIERMANN
Chief, Environmental Protection Division

/s/ *Craig J. Pritzlaff*
CRAIG J. PRITZLAFF
Assistant Attorney General
State Bar No. 24046658

LINDA B. SECORD
Assistant Attorney General
State Bar No. 17973400

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Telephone: (512) 463-2012
Fax: (512) 320-0911
Craig.Pritzlaff@texasattorneygeneral.gov

ATTORNEYS FOR THE STATE OF TEXAS

# CERTIFICATE OF COMPLIANCE

In accordance with Tex. R. App. P. 9.4(i)(2), I certify that the computer program used to prepare this document reported that there are 8,998 words in the pertinent parts of the document.

/s/ *Craig J. Pritzlaff*
CRAIG J. PRITZLAFF

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was e-served and e-mailed to the following counsel for Appellant listed below on June 26, 2015.

Jacqueline Lucci Smith
Lucci Smith Law PLLC
10575 Katy Freeway, Suite 470
Houston, Texas 77024
jls@luccismithlaw.com
**Attorneys for Appellant**

Joan Lucci Bain
Bain & Bain PLLC
10575 Katy Freeway, Suite 405
Houston, Texas 77024
jbain@bainandbainlaw.net

/s/ *Craig J. Pritzlaff*
CRAIG J. PRITZLAFF