**The STATE of Texas, Appellant,**

v.

**MALONE SERVICE COMPANY, Arthur Lee Malone and Larry Malone, Appellees.**

**No. A14–89–01132–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 25, 1993.

Rehearing Denied May 20, 1993.

Thomas E. Bilek, Jacalyn D. Scott, Houston, for appellant.

Brian E. Berwick, Nancy E. Olinger, Austin, for appellees.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION ON REMAND

J. CURTISS BROWN, Chief Justice.

This environmental enforcement action sought by the attorney general's office against the operators of a hazardous waste disposal plant comes to this Court on remand from the supreme court, 829 S.W.2d 763 (Tex.1992), *cert. denied* — U.S. ——, 113 S.Ct. 464, 121 L.Ed.2d 372. At trial, the jury assessed more than $3 million in penalties against Malone Service Company, its president and plant manager (collectively "MSC"), for groundwater contamination and unauthorized hazardous waste dumping. The State appealed our holding that the trial court improperly excluded evidence relating to MSC's defense of discriminatory enforcement. 804 S.W.2d 174. The supreme court, however, concluded that MSC failed to "show a clear intentional discrimination" by the State in taking strong enforcement action against Malone while taking little or no action against a quasi-governmental agency that was MSC's direct competitor. 829 S.W.2d at 767. We are bound by the supreme court's opinion as the law of the case. Upon consideration of issues not previously addressed, we affirm.

On August 17, 1977, the Texas Water Quality Board issued an order amending a deep well injection permit held by MSC. The amendment required that

[a] concrete separator shall be constructed for pretreatment of the waste to replace the existing earthen pit and placed in service within nine months after issuance of the amendment. *The Company shall discontinue use of the earthen pit upon completion of the separator* and close-out the earthen pit as described in the application within 18 months after issuance of this Amendment (emphasis added).

The Texas Department of Water Resources, predecessor agency of the Texas Water Commission ("TWC"), twice extended the deadline, but on September 19, 1979, it ordered MSC to cease receiving any waste materials into the earthen pit and to close the pit within nine months. A number of current and former MSC employees testified they continued to pump sludge into the pit, covertly. To conceal the activity from outsiders, they would write code phrases such as "pumping sludge ... *over the levy* [sic]" in their logbooks, and they shut down the pumps whenever inspectors came. When MSC entered into a compliance agreement with the State to close the pit with a tarpoleum, employees cut tears in the fabric so they could continue to pump waste into the pit. At TWC's request, the attorney general's office brought this action.

■ In its first point of error, MSC contends there is no evidence or insufficient evidence to support the jury's finding that MSC unlawfully used the earthen pit on 417 occasions because (1) as a matter of law, replacement is not a "use," and (2) there is direct evidence of only one alleged violation, presumably the day state officials raided MSC with a search warrant. Jurors disbelieved MSC's claim that the only hazardous waste pumped into the pit was material that had been removed from the pit along with rainwater in an effort to clean the pit. To the contrary, Mike Givens, MSC's plant manager from 1980–1984, attributed very little sludge from rainwater removal because rainwater was drawn off through a pipe that floated on the surface on the pit.

Further, Givens explained that trucks were unloaded into separators adjacent to the pit, solids would settle, and the resulting sludge would be pumped into the pit. So much more sludge was put into the earthen pit than was removed that the levee around the pit had to be built up; shift supervisor Art Sanders estimated that sludge from the separators caused the level of the pit to rise ten to fifteen feet. In addition, workers testified, waste from incoming trucks was occasionally dumped directly into the pit. MSC logbooks document the routine dumping of hazardous waste into the pit. We overrule point of error number one.

■ Next, MSC contends there is no evidence of 360 violations occurring before September 17, 1984 because, under law, MSC was a "permitted facility" for on-site storage of hazardous waste until that date. However, the State responds that MSC was not entitled to on-site exclusion because wastes generated on-site were commingled with waste from other sources. The jury specifically found that MSC did not conduct only on-site storage, processing or disposal of hazardous waste, and the evidence supports that finding. Moreover, other permits held by MSC explicitly prohibited continued use of the earthen pit. Point of error number two is overruled.

■ In its third point of error, MSC contends there can be no individual liability for its president or plant manager because they did not own the permit. The Texas Water Code states that:

[a] person who violates any provision of a permit issued under this chapter shall be subject to a civil penalty in any sum not exceeding $5,000 for each day of noncompliance and for each act of noncompliance. TEX. WATER CODE ANN. § 27.101(a) (Vernon 1988).

A "person" is defined as "a corporation ... and any other legal entity," which includes natural persons. TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 1988). However, appellants compare Section 27.101 liability with similar language limiting civil penalties for usury:

[a]ny person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received.... TEX.REV. CIV.STAT.ANN. art. 5069–1.06 (Vernon 1988).

That statute has been interpreted to limit liability to a principal only. *Wartman v. Empire Loan Co.*, 45 Tex.Civ.App. 469, 101 S.W. 499 (1909, no writ). Accordingly, appellants conclude that Section 27.101 does not impose liability for a "person" who does not own the permit, although he or she acts as agent, aider or abettor in violating the act. The State distinguishes *Wartman* by noting that its controlling issue was whether the collection agents' receipt of usurious interest was tortious. 101 S.W. at 500. While usury "has a contractual flavor," an environmental tort is more analogous to a situation in which a corporate officer who participates in or directs the commission of a tort may be held personally liable. *See, e.g., Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984). Liability is based on the agent's own actions, not his status as agent. *Id.* Indeed, in federal environmental cases, courts have applied the personal participation doctrine to "persons" who are not permit holders. *E.g., U.S. v. Johnson & Towers, Inc.*, 741 F.2d 662 (3rd Cir.1984), *cert. denied, Angel v. U.S.*, 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985); *U.S. v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *U.S. v. Hoflin*, 880 F.2d 1033 (9th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990). Point of error three is overruled.

MSC's fourth point of error, regarding discriminatory enforcement, has been overruled by the supreme court.

■ In its fifth point of error, MSC contends there is no evidence or insufficient evidence to support the jury's finding that MSC discharged solid waste into the groundwater daily for a total of 3,495 days. Actually, the jury was asked the following:

On how many occasions, if any, after September 19, 1979, did Malone Service Company continue to discharge *or cause seepage* into the ground water? (emphasis added.)

The State offered the expert opinion of Marilyn Long, an experienced TWC geologist, that the earthen pit had contributed and was contributing to continual contamination of the groundwater. Appellants contend that Long's opinion is "fatal" because she based her opinion on only one well, when TWC's own regulations require an applicant to install more than one well in its groundwater monitoring system. However, the State responds the existence of the TWC rule does not invalidate Long's opinion, and at most it created a credibility choice for the jury. Long also assumed the pit was leaking because it had no clay liner, and the State contends the jury was entitled to disbelieve Arthur Lee Malone's testimony that he had lined the pit in 1968, particularly when no clay liner was mentioned in MSC's closure plan to eliminate subsurface leakage from the pit. Carl Brassow, MSC's engineering consultant, admitted that as early as June 1982, he believed there was groundwater contamination coming from the pit. MSC also contends the existence of contamination does not support a finding of continued activity; however, we believe the jury could reasonably infer continual seepage in lieu of credible evidence of a force or event that would have stopped the seepage. *See Texas Pet Foods, Inc. v. State*, 578 S.W.2d 814, 822 (Tex.Civ.App.—Waco), *aff'd in part and rev'd in part*, 591 S.W.2d 800, 805 (Tex. 1979). Particularly in a case such as this in which subsurface discharge is not readily substantiated by direct observation, jury inference is appropriate. We overrule appellants' fifth point of error.

■ Next, MSC contends the trial court allowed impermissible argument by the State's counsel as to his personal opinion of the credibility of witnesses Givens and Long, and that Arthur Lee Malone had been coached by defense counsel. The State's counsel (1) stated several times that Givens was telling the truth, that he "told

it straight," and (2) contrasted Long as "a truth teller" who "could hardly be accused of being a slick professional witness," while Malone gave "smooth practiced testimony." While appellants contend that injecting counsel's personal opinion into jury argument constitutes improper bolstering, we fail to see how the "nature, degree and extent" of the statements constitutes reversible error. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839–40 (Tex.1979). From a review of the entire case, we conclude the verdict was grounded on proper proceedings and overwhelming evidence rather than the allegedly improper statements made in jury argument. *Id.* We overrule point of error number six.

■ Finally, MSC contends the penalties assessed by the jury are excessive. Again, we disagree. The State's case against MSC teems with evidence, from logbooks to workers' testimony, that appellants knew it was unlawful and unsound to pump into the pit, yet company policy authorized illegal use of the pit, to be stopped when investigators came on site. Assessing the maximum penalty against MSC cannot be considered extreme in light of blatant conduct. We overrule point of error number seven.

The judgment of the trial court is affirmed.